**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| INFERNAL TECHNOLOGY, LLC, and TERMINAL REALITY, INC.,<br><br>                              Plaintiffs,<br><br>      v.<br><br>MICROSOFT CORP.,<br><br>                              Defendant. | Civil Action No. 2:18-cv-00144-JRG-RSP |

**DEFENDANT MICROSOFT CORPORATION'S MOTION TO COMPEL
PRODUCTION OF INFRINGEMENT EXPERT REPORT AND INFRINGEMENT
CONTENTIONS FROM PRIOR LITIGATION INVOLVING THE SAME ASSERTED
PATENTS AND CLAIMS**

Defendant Microsoft Corporation ("Microsoft") respectfully moves to compel Plaintiffs Infernal Technology, LLC, and Terminal Reality, Inc. ("Plaintiffs") to produce their final infringement contentions and expert report from a prior litigation relating to video games that Plaintiffs are now relying upon as embodying the asserted claims of the asserted patents.

## I.    INTRODUCTION

Plaintiffs assert nine patent claims against twenty different video games developed or published by Microsoft, and six patent claims against seven different computers and game consoles made or sold by Microsoft.  This litigation follows on the heels of Plaintiffs' lawsuit against Electronic Arts, Inc. ("EA"), Case No. 2:15-cv-01523-JRG-RSP, in which Plaintiffs asserted the same patents and many of the same claims as in this case.  Plaintiffs have sought to rely on the relationship between the two cases, including by repeatedly telling Microsoft that they intend to ask the Court to simply adopt here its claim constructions from the EA case.  And, Plaintiffs have affirmatively relied on the success of games accused in the EA case in arguing that the claims are non-obvious—which would necessarily require Plaintiffs to prove that the games embody the asserted claims.  *See* Ex. A (Plaintiffs' Response to Interrogatory 4 (excerpt)).

Given Plaintiffs' efforts to link the two cases and to rely on their allegation that the EA games practice the patents to support their claims against Microsoft, Microsoft made what should have been a straightforward request: that Plaintiffs provide the core documents that set forth how Plaintiffs had earlier interpreted the claims they are asserting against Microsoft.  Specifically, Microsoft asked Plaintiffs to produce their infringement expert report and infringement contentions from the EA litigation.  While Plaintiffs agreed to (and did) produce their preliminary contentions without any objection as to relevance or burden (or otherwise), Plaintiffs have refused to produce their final infringement contentions or their infringement report.

Plaintiffs initially attempted to rely on those documents' inclusion of EA's confidential

information as a basis for withholding them (without actually asking EA whether it objected to the production), but EA has since stated that it has no objection to the production of these documents with an appropriate Protective Order designation.  Ex. B.  And since the expert report and final infringement contentions constitute a small set of readily-identifiable documents, there is no burden or proportionality concern in producing them—and Plaintiffs have asserted none.

Instead, Plaintiffs' *only basis* for withholding these documents is to assert that they are not relevant or discoverable under Fed. R. Civ. P. 26.  This defies both law and logic.  Just as Plaintiffs' preliminary infringement contentions from the EA litigation were (undisputedly) relevant and discoverable, Plaintiffs' final infringement contentions and expert report applying the same claims of the same patents are relevant here—not only to claim construction and invalidity, but also to the disputed issue of marking and the credibility of the testimony of Plaintiffs' expert in this case.  Indeed, EA's expert report on *invalidity* considered and relied upon Plaintiffs' infringement contentions against EA; Plaintiffs have produced EA's expert report on invalidity without dispute, but have simultaneously withheld their own report on infringement and the corresponding contentions upon which EA's invalidity case was premised. *E.g.*, Ex. C (EA's Expert Report on Invalidity (excerpt)).  Fundamentally, the relevance questions boils down to this:  can Plaintiffs rely on their infringement and claim construction positions from the EA case to, e.g., support their claim construction and validity positions, while simultaneously withholding basic documents showing what the disputes as to claim scope were in that case or how Plaintiffs applied that claim scope in arguing infringement?  They cannot.

## II.   ARGUMENT

### A.   Applicable Legal Standards

This Court's discovery order requires the parties to produce, without awaiting a discovery request, those documents "relevant to the pleaded claims or defenses involved in this action."

ECF No. 38 at 3.   While a party moving to compel disclosure bears the initial burden to show

relevance within the meaning of Fed. R. Civ. P. 26, once that showing is made, the burden shifts

to the non-moving party to "demonstrate why the discovery is irrelevant, overly broad, or unduly

burdensome or oppressive and thus should not be permitted." *Weatherford Tech. Holdings, LLC*

*v. Tesco Corp.*, No. 2:17-CV-00456-JRG, 2018 WL 4620634, at *1 (E.D. Tex. Apr. 27, 2018).

> **B.      Plaintiffs' Infringement Allegations Against EA are Relevant to Plaintiffs'
> Infringement Allegations Against Microsoft.**

Plaintiffs settled and dismissed the EA case on January 22, 2018.   No. 2:15-cv-01523-

JRG-RSP, dkt. no. 143.   They sued Microsoft eleven weeks later, on April 11, 2018.   ECF No. 1.

Both lawsuits asserted claims of U.S. Patent Nos. 6,362,822 and 7,061,488 against the video

game rendering engines used in a set of accused games sold by each defendant.   The claim charts

attached to the two complaints appear to attempt to read the claims against the lighting and

shadowing techniques used in the games accused in the respective cases.   In fact, in the EA case,

Plaintiffs initially accused—but later dropped—games using the third-party engine "CryEngine,"

which is also at issue here; the CryEngine chart attached to the EA complaint is substantively

identical to the corresponding chart against Microsoft, but for the fact that the chart against EA

included additional claims.   *See* ECF No. 1-03; Case No. 2:15-cv-01523-JRG-RSP, dkt. no. 1-04.

The Court resolved a number of claim construction disputes in the EA case concerning

the same claims asserted here.   Case No. 2:15-cv-01523-JRG-RSP, dkt. no. 98.   Indeed, all nine

of the claims that Plaintiffs presently assert against video games in this case were also asserted

against EA and remained in the case until the time of settlement, during expert discovery.

Moreover, Plaintiffs have said they intend to rely entirely on the Court's claim constructions

from the EA case, having repeatedly told Microsoft they will ask the Court to adopt those

constructions here and that they do not believe additional claim construction is necessary.

### C.      Plaintiffs' Infringement Expert Report and Contentions Against EA are Relevant to Several Issues in This Case and Should Be Produced.

In light of the above, Plaintiffs' infringement expert report and infringement contentions from the EA case are squarely relevant to central issues in this case—namely, claim construction, invalidity, marking, and eventually, the credibility of Plaintiffs' expert in this case.

*First*, Plaintiffs' infringement allegations against EA are relevant to claim construction. As an initial matter, Plaintiffs' prior assertions of claim scope are relevant to their arguments about claim scope here; if Plaintiffs argued for one claim construction when accusing EA's products, that bears on the Plaintiffs' credibility when arguing for a narrower construction here. But even beyond that, the purpose of claim construction is to resolve particular disputes as to claim scope that arise between the parties in the context of the specific infringement and invalidity claims raised in the case before the Court.  *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1319 (Fed. Cir. 2016).  Plaintiffs have said that they intend to urge the Court simply to adopt the constructions it reached in the EA case and to conduct no further claim construction here.  Whether this case raises different substantive disputes as to claim scope than the EA case—and thus whether there is a need for the Court to resolve additional or different disputes—depends on Plaintiffs' infringement allegations in this case and in the EA case.  For example, Plaintiffs may apply a claim limitation differently against Microsoft than they did against EA, potentially necessitating resolution of different or additional issues.

*Second*, Plaintiffs' infringement expert report and contentions are further relevant to invalidity.  At the outset, Plaintiffs have affirmatively relied on games accused in the EA case in arguing that the asserted claims are valid, citing the success of accused EA games as a purported secondary consideration of non-obviousness.  *See* Ex. A.  That contention only makes sense if the EA games practice the asserted claims of the asserted patents.  Plaintiffs cannot reasonably

attempt to rely on those games as embodying while withholding their infringement contentions and expert reports relating to those games.  Moreover, "[a] century-old axiom of patent law holds that a product 'which would literally infringe if later in time anticipates if earlier.'"  *Upsher-Smith Labs., Inc. v. Pamlab, L.L.C.*, 412 F.3d 1319, 1322 (Fed. Cir. 2005) (citation omitted). Insofar as Plaintiffs' allegations against EA evince a broader or non-overlapping reading of the claims than their allegations here, that bears on the scope of what should, according to Plaintiffs' own litigation positions, constitute invalidating prior art.  In other words, if Plaintiffs asserted that the scope of the claims covered "A" in the EA case and "B" in this case, then the scope of the claims for invalidity purposes must be "A + B."  Indeed, the relevance of these materials to invalidity is made plain by documents Plaintiffs have already produced.  EA's ***invalidity*** report relies upon Plaintiffs' infringement contentions precisely to make the point that the claims are invalid if read as broadly as Plaintiffs read them for their infringement allegations.  *E.g.*, Ex. C. Plaintiffs produced the invalidity report but ***withheld the infringement contentions upon which it relied***.  Plaintiffs should not be permitted to cherry-pick the evidence they produce in this way.

*Third,* for the same reasons, Plaintiffs' infringement expert report and contentions are also relevant to the issue of Plaintiffs' failure to satisfy the marking requirement.  Whether Plaintiffs had a marking obligation for the video games accused in the EA case (and ultimately licensed under the EA settlement) depends on whether those games practice the patent claims.

*Finally*, whether the testimony of Plaintiffs' expert here—concerning claim scope, technological background, or anything else—is inconsistent with corresponding testimony in the EA case matters to the credibility of Plaintiffs' expert here.  The relevance of prior expert testimony as cross-examination material in a later case where the same expert testifies on similar subject matter is black-letter law.  *See, e.g.*, *Brown v. Overhead Door Corp.*, No. 06 C 501107,

2008 WL 1924885, at *1 (N.D. Ill. Apr. 29, 2008) (party expert's prior testimony is relevant under Rule 26(b)(1) to allow opponent to explore inconsistencies with earlier opinions); *Norris v. Murphy*, No. Civ. A. 00-12599-RBC, 2003 WL 21488640, at *4 (D. Mass. June 26, 2003) (Rule 26's expert disclosure requirement exists to uncover expert's prior testimony for use in cross-examination). Even if Plaintiffs use a different expert here, Microsoft is entitled to probe whether their earlier litigation positions are inconsistent with their positions here. *E.g., U.S. Fire Ins. Co. v. Bunge N. Am., Inc.,* 244 F.R.D. 638, 646 (D. Kan. 2007) (party entitled to discovery of documents that could evince adversary's prior inconsistency with litigation positions on the same subject matter); *Commonwealth Edison Co. v. Allied Chemical Nuclear Prods., Inc.*, No. 79 C 2866, 1990 WL 36687, at *1 (N.D. Ill. Feb. 28, 1990) (party entitled to show opponent's "diametrically opposed" litigation positions in prior cases on same subject matter).

Unsurprisingly, courts in similar circumstances have found materials like these to be relevant and ordered their production. For example, in *Endotach LLC v. Cook Medical Inc.*, No. 1:13-cv-01135-LJM-DKL, 2014 WL 12753789, at *3 (S.D. Ind. May 16, 2014), the Court ordered production of the defendant's prior expert reports concerning either the products accused in the case *or* products using the same "stent-graft technology" so that the plaintiff could "examine [defendant's] prior litigation positions with regard to the Accused Products at issue." In *Apple, Inc. v. Samsung Elecs. Co.*, No. C 11-1846 LHK, 2012 WL 1232267, at *6 (N.D. Cal. Apr. 12, 2012), the Court ordered production of fact *and* expert witness deposition transcripts along with all declarations and affidavits from Apple's other cases bearing a "technological nexus" to the patent case at hand. Because Plaintiffs' infringement expert report and contentions directly relate to central issues in this case, they are relevant and should be produced.[1]

---

[1] The fact that Plaintiffs have produced their preliminary contentions from the EA case does not relieve them of their obligation to produce their expert report or the final contentions. Those

### D.   Plaintiffs Cannot Show that the Requested Discovery is Overly Broad, Unduly Burdensome, or Oppressive.

Once the moving party makes a showing that the materials sought are relevant, the burden shifts to the non-moving party to show that the requested discovery is overly broad, unduly burdensome, or oppressive.  Plaintiffs cannot make such a showing here.  Microsoft seeks a small set of discrete documents—Plaintiffs' infringement report against EA, the exhibits to the report, and the final contentions Plaintiffs served earlier in the case.  Identifying and these documents and emailing them to Microsoft would not take more than a few minutes.

Plaintiffs previously cited the documents' inclusion of EA's confidential information and the burden of clearing up the associated confidentiality issues as a basis for withholding the documents.  That concern has been resolved.  After Plaintiffs expressed that they believed they had no obligation to contact EA and ascertain whether EA actually objected to production, Microsoft took that step, and EA responded that it has no objection to the production of these documents with an appropriate designation under the Protective Order in this case.  *See* Ex. B. Although Microsoft presented this information to Plaintiffs, Plaintiffs have maintained that they have no obligation to produce the infringement expert report and infringement contentions. However, as set forth above, these documents are relevant to central issues in this case, and there are no burden or proportionality concerns with requiring their production.

## III.   CONCLUSION

Plaintiffs should be ordered to produce their infringement expert report and infringement contentions from the EA litigation, along with the accompanying exhibits.

---

preliminary contentions (which consist of high-level charts based on public information) are insufficient to inform Microsoft of Plaintiffs' positions on claim scope or to allow Microsoft to evaluate whether the EA games actually practice the claims as Plaintiffs contend.

Dated:  March 29, 2019                    DURIE TANGRI LLP


By:  _/s/ Melissa R. Smith_
     SONAL N. MEHTA (CA SBN 222086)
     smehta@durietangri.com
     EUGENE NOVIKOV (*Pro Hac Vice*)
     enovikov@durietangri.com
     TIMOTHY P. HORGAN-KOBELSKI (*Pro Hac Vice*)
     tkobelski@durietangri.com
     ERIC C. WIENER (*Pro Hac Vice*)
     ewiener@durietangri.com
     ANDREW L. PERITO (CA SBN 269995)
     aperito@durietangri.com
     JOSHUA D. FURMAN (CA SBN 312641)
     jfurman@durietangri.com
     DURIE TANGRI LLP
     217 Leidesdorff Street
     San Francisco, CA 94111
     Telephone:    415-362-6666
     Facsimile:    415-236-6300

     MELISSA R. SMITH (TX SBN 24001351)
     melissa@gillamsmithlaw.com
     GILLAM & SMITH, LLP
     303 South Washington Avenue
     Marshall, TX 75670
     Telephone:    903-934-8450
     Facsimile:    903-934-9257

     Attorneys for Defendant
     *Microsoft Corp.*

## **CERTIFICATE OF CONFERENCE**

I hereby certify that on February 26, 2019 Defendant's counsel met and conferred with

Plaintiffs' counsel pursuant to Local Rule CV-7 regarding the substance of this motion.

Plaintiffs' counsel indicated that Plaintiffs oppose this motion.


_____/s/ *Melissa R. Smith*_____
Melissa R. Smith

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 29th day of March, 2019 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ <em>Melissa R. Smith</em>
Melissa R. Smith
