**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| INFERNAL TECHNOLOGY, LLC, and TERMINAL REALITY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MICROSOFT CORP., <br><br> Defendant. | Civil Action No. 2:18-cv-00144 |

**DEFENDANT MICROSOFT CORP.'S MOTION TO COMPEL RESPONSE TO
MICROSOFT CORP.'S INTERROGATORY NO. 20**

Defendant Microsoft Corporation ("Microsoft") respectfully moves to compel Plaintiffs Infernal Technology, LLC, and Terminal Reality, Inc. ("Plaintiffs") to respond to Microsoft's Interrogatory No. 20 regarding Plaintiffs' contentions as to its allegedly embodying products,[1] which Plaintiffs seek to rely upon for both liability and damages purposes in this action.

I.     INTRODUCTION

Plaintiffs have asserted that their own video game engines (the "Demon" or *Nocturne* engine, and a later engine called the Infernal Engine), and video games that use them, embody or practice the Asserted Claims. Indeed, Plaintiffs have made this allegation central to the case they will present at trial. For example, Plaintiffs rely on the source code of the *Nocturne*/Demon Engine for Terminal Reality's *Nocturne* video game as evidence of alleged conception and reduction to practice of the Asserted Claims at a time earlier than the date of the first application to which the Patents-in-Suit claim priority. *See, e.g.*, Ex. B at 8. Plaintiffs also rely on these games and engines as the basis for alleged secondary considerations of non-obviousness. *See, e.g.*, Ex. C at 19. Finally, Plaintiffs rely on one of these games, *Kinect Star Wars*, to bolster their allegations of willful infringement. In particular, Plaintiffs claim that because Microsoft collaborated in the development of this allegedly embodying game, which used an allegedly embodying engine, Microsoft knew about the Patents-in-Suit and its supposed infringement of the Asserted Claims. *See, e.g.*, Ex. A at 3; Complaint, Dkt. No. 1 ¶¶ 22-23.

Microsoft therefore served discovery aimed at testing Plaintiffs' allegations that their own products constitute evidence of an earlier priority date, non-obviousness, and willfulness. Microsoft's Interrogatory No. 20 seeks—for video games and video game engines developed or

---

[1] Attached as Exhibit A is an excerpt of Plaintiffs' Objections and Responses to Microsoft's Third Set of Interrogatories (Nos. 19-20).

1

licensed by Plaintiffs that Plaintiffs contend embody the Asserted Claims—claim charts identifying how Plaintiffs contend the alleged embodying products met the limitations of the Asserted Claims. Plaintiffs' objections to the interrogatory do not deny that the information Microsoft seeks is relevant. *See* Ex. A at 3. Rather, Plaintiffs object only that the request is unduly burdensome and not proportional to the needs of the case. *Id.* And the extent of Plaintiffs' response is simply a listing of alleged embodying games and game engines and a statement, purportedly pursuant to Rule 33(d), that Plaintiffs will make the game engine code available for inspection. *Id.* at 4-5.

Plaintiffs' response is insufficient. Because Plaintiffs seek to rely on these games to try to: (1) push back the priority date; (2) show non-obviousness; *and* (3) prove that Microsoft's infringement was willful, Microsoft is entitled to test the merits of Plaintiffs' claims concerning embodiment. To do that, Microsoft must know *how* Plaintiffs contend these products embody or practice the asserted claims. Plaintiffs' general citation to the entire body of source code for its two game engines fail to convey this information because it does not tell Microsoft what source code satisfies which limitations of which Asserted Claims, and how. To avoid the need for motion practice on this issue, Microsoft proposed that Plaintiffs provide claim charts solely for *one* Asserted Claim, Claim 1 of the '822 Patent for each of the two asserted game engines.[2] Plaintiffs refused to make even that targeted supplement. Plaintiffs should now be compelled to supplement their responses to disclose the theory and factual basis for their contention as to how their engines and games allegedly embody the Asserted Claims.

---

[2] Microsoft asked for only one asserted claim to be charted for (i) the *Nocturne*/Demon Engine and the *Nocturne* game (on which Plaintiffs rely for alleged conception and reduction to practice (and secondary considerations of non-obviousness) and (ii) the Infernal Engine and the *Kinect Star Wars* video game (on which Plaintiffs rely for their willfulness allegations). Microsoft reserved its right to seek additional charts if needed after reviewing these charts.

## II.     ARGUMENT

### A.     Applicable Legal Standards

While a party moving to compel disclosure bears the initial burden to show relevance within the meaning of Federal Rule of Civil Procedure 26, once that showing is made, the burden shifts to the non-moving party to "demonstrate why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive and thus should not be permitted." *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456-JRG, 2018 WL 4620634, at *1 (E.D. Tex. Apr. 27, 2018). A party may respond to an interrogatory by referencing business records only if the burden of deriving the answer to the interrogatory is substantially the same for the propounding party as the responding party. *See* Fed. R. Civ. P. 33(d). While "Rule 33(d) applies to fact interrogatories…courts have consistently held that it cannot be used with respect to contention interrogatories," which seek not simply facts but a party's theory with regard to application of the facts. *Fleming v. Escort, Inc.*, No. CV 09-105-S-BLW, 2011 WL 573599, at *2 (D. Idaho Feb. 13, 2011); *accord United States ex rel. Landis v. Tailwind Sports Corp.*, 317 F.R.D. 592, 594 (D.D.C. 2016). "That makes sense because the legal contentions of a party are not contained in old business records, and so must be explained by counsel in an answer to an interrogatory." *Fleming*, 2011 WL 573599, at *2.

### B.     Plaintiffs' Reliance on Their Own Games and Engines That They Contend Embody the Claims Makes the Details of and Basis for Plaintiffs' Contentions Relevant and Proportional Targets of Discovery

Courts in this district and many others have routinely ordered patentees to provide claim charts of alleged embodying products in the past, noting specifically that a patentee's intent to rely on such products justifies the burden of responding to interrogatories seeking such charts. Indeed, courts in this district have ordered production of detailed claim charts of five alleged embodying prototypes where the patentee "refused to drop its reliance on the five prototypes at

3

trial in exchange for not being required to produce the requested claim charts." *UltimatePointer, L.L.C. v. Nintendo Co.*, Nos. 6:11-CV-496, -571-LED, 2014 WL 12521379, at *3 (E.D. Tex. June, 4, 2014); *Superspeed, LLC v. IBM Corp.*, Case No. 2:07-CV-00089-CE, Dkt. No. 152 at 1 (E.D. Tex. Jan. 7, 2009) (granting motion to compel code claim chart contentions for plaintiff's embodying products); *see also, e.g.*, *Blast Motion, Inc. v. Zepp Labs, Inc.*, No. 3-15-CV-00700-JLS-NLS, 2016 WL 5107677, at *4 (S.D. Cal. Mar. 2, 2016) (granting a motion to compel a supplemental response to an interrogatory seeking claim charts for alleged embodying products); *Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys., Inc.*, No. 1:05-cv-955, 2011 WL 2600718, at *3-5 (M.D.N.C. June 29, 2011).

The Court's order in *UltimatePointer* is particularly apt here. During the parties' meet and confer, Plaintiffs' counsel expressly clarified and restated that they intend to rely on their embodying products as evidence at trial. In attempting to distinguish the Court's order in *UltimatePointer*, Plaintiffs have stated that because "Plaintiffs' infringement contentions do not contain any assertions regarding whether any TRI prototypes practice any claims of the asserted patents" the *UltimatePointer* is "inapposite." This is a non sequitur. The holding of *UltimatePointer* has nothing to do with whether the allegedly embodying products are "prototypes." Rather, *UltimatePointer* stands for the proposition that when a plaintiff intends to rely at trial on its own products as embodying the asserted claims, it must provide claims charts that disclose its contention as to how those products allegedly embody the asserted claims. *UltimatePointer*, 2014 WL 12521379, at *3.

Even in the more ordinary case where a plaintiff relies on its own products as evidence of secondary considerations of non-obviousness or as evidence of conception and/or reduction to practice before the filing date, courts have compelled disclosure of embodying product claim

4

charts. *See, e.g.*, *LifeNet Health v. LifeCell Corp.*, No. 2:13CV486, 2014 WL 4162113, at *4-5 (E.D. Va. Aug. 19, 2014) (granting motion to compel claim charts of alleged embodying products and distinguishing *Samsung SDI Co. v. Matsushita Elec. Indus. Co.*, No. 05–1680, 2006 WL 5097356, at *1 (W.D. Pa. Oct. 11, 2006), where the court found the burden not justified in light of patentee's unequivocal statement that it "is not relying on the assertion that its own apparatus, product, device, process, method, act, or other instrumentality practices any of the claimed inventions"); *see also Fleming*, 2011 WL 573599, at *2 (rejecting Rule 33(d) document citations for contentions as to conception and reduction to practice). But this is not just an ordinary case. In both their Complaint and in their response to Microsoft's interrogatory regarding Plaintiffs' willfulness contentions, Plaintiffs rely on their disclosure of source code for the alleged embodying Infernal game engine during Microsoft's collaboration in the development of the allegedly embodying Kinect Star Wars game. On this basis, Plaintiffs contend that Microsoft somehow knew about the Patents-in-Suit and its supposed infringement of the Asserted Claims. *See, e.g.*, Ex. A at 3; Complaint, Dkt. No. 1 ¶¶ 22-23. Particularly where Plaintiffs seek enhanced damages based on their willfulness allegations, discovery into Plaintiffs' contentions regarding its alleged embodying products is necessary and proportional.

Plaintiffs relied heavily in the parties' meet and confer correspondence and telephonic discussion on the denial of a motion to compel embodying product claim charts in *Leader Technologies Inc. v. Facebook Inc.*, No. CIV. 08-862-JJF-LPS, 2009 WL 3021168 (D. Del. Sept. 4, 2009), but in that case the court was presented with "**no authority** to support requiring a patentee to prove, through detailed claim charts, at a relatively early stage of discovery, how its own (by definition, 'unaccused') products practice its own patent." *Leader Techs.*, 2009 WL 3021168, at *2 (emphasis added). By contrast, Microsoft has presented directly-relevant

5

authority from this district and others ordering the disclosure of the requested embodying product claim charts. While the total lack of authority presented by the moving party in *Leader Technologies* alone renders that court's denial of the motion to compel inapposite, the court's emphasis there on the "early stage of discovery" in that case further distinguishes it. *See id.* Here, the parties have already exchanged multiple rounds of infringement and validity contentions and associated source code claim charts, and are on the doorstep claim construction. Finally—and critically—the *Leader Technologies* court did not address a plaintiff's attempt to rely on embodying products for its allegations of willfulness as Plaintiffs seek to do here.

### C. Plaintiffs Cannot Show that the Requested Discovery is Overly Broad, Unduly Burdensome, or Oppressive.

Once a moving party makes a showing that the materials it seeks are relevant, the burden shifts to the non-moving party to show that the requested discovery is overly broad, unduly burdensome, or oppressive. *Weatherford Tech. Holdings*, 2018 WL 4620634, at *1. Plaintiffs cannot make such a showing here. In light of Plaintiffs own reliance for multiple issues on the allegedly embodying products, Plaintiffs' boilerplate objection that the "benefit of the requested discovery is not great enough to justify responding with this level of detail and analysis" rings hollow. Plaintiffs will be required to prove that its products actually embody the Asserted Claims—this burden is one that Plaintiffs have already chosen to undertake by virtue of their contentions and the requested discovery imposes nothing additional. *See Fleming*, 2011 WL 573599, at *2 ("At trial—or at summary judgment—[plaintiff] cannot just submit a document and claim generally that each limitation of each claim is contained therein without specifically explaining what language supports what limitation. So the burden of answering this interrogatory is again a mirage because [plaintiff] must provide this information anyway."). Moreover, this is a proportional burden that is appropriately borne by Plaintiffs—indeed, the requested

6

information can only be provided by Plaintiffs. *See Blast Motion*, 2016 WL 5107677, at *4 (finding that "it makes little economic sense for [defendant] to reverse engineer the products in an effort to determine how [plaintiff] claims its own products practice the claims of the asserted patents"); *Fleming*, 2011 WL 573599, at *2 ("[L]egal contentions cannot be found in the documents but must be pointed out by counsel.").

The authority Plaintiffs relied upon in the parties' meet and confer does not demonstrate otherwise. In *Apple Inc. v. Wi-LAN Inc.*, the court required the plaintiff to provide "the legal and factual basis for [plaintiff's] contention that the prototype or product practiced or would have practiced one or more claims of the Asserted Patents" and "identify[] the structures or functionalities in each prototype or product that purportedly meet each limitation of each such asserted claim." *Apple Inc. v. Wi-LAN Inc.,* No. 14-CV-2235-DMS (BLM), 2018 WL 733740, at *3-5 (S.D. Cal. Feb. 6, 2018). And the two remaining cases Plaintiffs cited as supporting their refusal to provide embodying product claim charts relate to the burden created by requests for ***validity*** claim charts regarding ***all prior art references*** (*In re Ameranth Cases*, No. 11-CV-1810-DMS (WVG), 2018 WL 1744497, at *2 (S.D. Cal. Apr. 11, 2018)) and regarding ***each of written description, enablement, and best mode*** (*Friskit, Inc. v. Real Networks, Inc.*, No. C 03-5085 WWS (MEJ), 2006 WL 1305218, at *1-2 (N.D. Cal. May 11, 2006)), both of which are substantially more burdensome than the discovery sought here.

Nevertheless, in order to mitigate the discovery burden Plaintiffs have assumed by seeking to rely on their games and game engines, Microsoft's proposal that Plaintiffs provide claim charts for but a single asserted claim for each of its alleged embodying engines and an associated game is even more clearly a proportional target of admittedly relevant discovery.

7

Dated: May 14, 2019					DURIE TANGRI LLP


							By: */s/ Melissa R. Smith*
							    SONAL N. MEHTA (CA SBN 222086)
							    smehta@durietangri.com
							    EUGENE NOVIKOV (*Pro Hac Vice*)
							    enovikov@durietangri.com
							    TIMOTHY P. HORGAN-KOBELSKI (*Pro Hac Vice*)
							    tkobelski@durietangri.com
							    ERIC C. WIENER (*Pro Hac Vice*)
							    ewiener@durietangri.com
							    ANDREW L. PERITO (CA SBN 269995)
							    aperito@durietangri.com
							    DURIE TANGRI LLP
							    217 Leidesdorff Street
							    San Francisco, CA 94111
							    Telephone:    415-362-6666
							    Facsimile:    415-236-6300

							    MELISSA R. SMITH (TX SBN 24001351)
							    melissa@gillamsmithlaw.com
							    GILLAM & SMITH, LLP
							    303 South Washington Avenue
							    Marshall, TX 75670
							    Telephone:    903-934-8450
							    Facsimile:    903-934-9257

							    Attorneys for Defendant
							    *Microsoft Corp.*

## CERTIFICATE OF CONFERENCE

I hereby certify that on April 9, 2019 Defendant's counsel Melissa Smith, Sonal Mehta, and Eugene Novikov met and conferred with Plaintiffs' counsel Eric Buether via teleconference pursuant to Local Rule CV-7 regarding the substance of this motion. Plaintiffs' counsel indicated that he disagreed that the law requires supplementation to Plaintiffs' response to Microsoft's Interrogatory No. 20 and the parties arrived at an impasse. Defendant's counsel further inquired via email on May 7, 2019 whether the parties could avoid motion practice by reaching agreement on the proposal included in page 2 of this motion and Plaintiffs' counsel.  Plaintiffs' counsel did not respond.  Defendants' counsel again emailed Plaintiffs' counsel on May 13, 2019 to indicate that Defendants intended to file the present motion and would inform the Court that Plaintiffs oppose this motion unless Plaintiffs indicated otherwise.  Plaintiffs' counsel rejected Defendant's proposal (and instead attempted to condition partial supplementation on Microsoft's agreement to supplement a discovery response that Plaintiffs have not raised since last year). Microsoft understands that Plaintiffs are opposed to this Motion.

                                                                  /s/ Melissa R. Smith

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 14th day of May, 2019, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

                                                  */s/ Melissa R. Smith*